PRESENT:  Powell, C.J., Kelsey, Chafin, and Russell, JJ., and Goodwyn and Millette, S.JJ.

PHILLIP BEN-ZION LEISER

v.  Record No. 251120

OPINION BY
JUSTICE WESLEY G. RUSSELL, JR.
JULY 23, 2026

VIRGINIA STATE BAR EX REL.
FIFTH DISTRICT, SECTION I COMMITTEE

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Cheryl V. Higgins, Chief Judge Designate,
Alexander R. Iden, and Bradley B. Cavedo, Judges Designate

Phillip Ben-Zion Leiser appeals from an order of a three-judge circuit court finding that

he violated Rules of Professional Conduct ("RPC") 8.2 and 8.4(b) and suspending his license to

practice law in the Commonwealth of Virginia for a period of three years.  For the following

reasons, we affirm the judgment of the three-judge circuit court.

I.  BACKGROUND

Leiser was admitted to the Virginia State Bar ("VSB") in 1997.  In March 2025, after an

investigation into statements he made in four separate filings in the Court of Appeals and this

Court, the VSB's Fifth District, Section I Subcommittee issued a Certification to the VSB

Disciplinary Board finding that Leiser violated RPC 8.2 and RPC 8.4(b).  Leiser made the filings

during his representation of two unrelated clients, NAG, Inc. ("NAG") and the Virginia Citizens

Defense League ("VCDL").

A.  NAG, Inc. representation

In 2019, Leiser represented NAG as a defendant in a suit for unpaid wages.  In 2021,

NAG moved to dismiss the suit or transfer it for lack of subject matter jurisdiction, but the trial

court denied the motion as to all but two counts of the complaint.  A month later, Leiser filed

objections to the ruling, which had not yet been memorialized in a written order.  The following

day, the trial court entered a written order denying NAG's motion to dismiss, asserting its jurisdiction over the case, and directing NAG to answer within 10 days.

NAG failed to respond to discovery requests, ultimately incurring sanctions and a court order directing it to respond. In October 2022, after NAG failed to comply with the order, the trial court entered default judgment against it.

In response, NAG noted its objections to the default judgment order and then sought, pursuant to Code § 8.01-644, a writ of prohibition from the Court of Appeals to prohibit the trial court judge from exercising jurisdiction over the matter and requiring the trial court to vacate what it had already done.[1] The Court of Appeals denied NAG's petition, rejecting the argument that the trial court lacked subject matter jurisdiction and concluding that a writ of prohibition was not available to NAG to undo something already done in the lower court. In its order, the Court of Appeals specifically noted that the proper procedural mechanism for NAG to pursue the argument raised by Leiser was not a writ of prohibition, but rather to file a direct appeal of the trial court's decision at the appropriate time.

On behalf of NAG, Leiser then noted an appeal to this Court and, in the petition, accused the Court of Appeals of "intellectual sophistry" and "blindly (and falsely) stating that NAG is

---

[1] A "writ of prohibition is directed to a judge or an administrative body with quasi-judicial power where the restrained entity either lacks jurisdiction or is exceeding the jurisdiction permitted by law." Kent Sinclair, Virginia Civil Procedure § 3.6[B] (7th ed. 2026). The function of the writ "is not to correct error, but to prevent the exercise of jurisdiction of the court by the judge to whom it is directed, either where he has no jurisdiction at all, or is exceeding his jurisdiction." *Rollins v. Bazile*, 205 Va. 613, 616 (1964). Pursuant to Code § 8.01-644, "application for a writ of mandamus or a writ of prohibition shall be on petition verified by oath, *after the party against whom the writ is prayed has been served with a copy of the petition and notice of the intended application a reasonable time before such application is made.*" (Emphasis added.) Once served, the person against whom the writ is sought is entitled to file a defensive pleading. *See* Code § 8.01-647. Thus, when a party seeks a writ of prohibition against a trial court judge, that judge must be served with the petition and is a necessary party to the action, including any appeals related to the writ.

confusing [subject matter jurisdiction] with 'active jurisdiction.'" Leiser continued by asserting that the trial court "had absolutely no good faith basis upon which to exercise [subject matter jurisdiction] over this dispute" and that the Court of Appeals ignored "the opportunity to correct this manifest injustice but instead chose to double down on the trial court's intellectual sophistry." Leiser continued by stating that the Court of Appeals "disingenuously denied" NAG's petition for writ of prohibition. Notably, despite the fact that the trial judge was the party Leiser sought to prohibit, Leiser did not serve the notice of appeal on the trial judge or otherwise notify the trial judge of the appeal.

This Court dismissed NAG's petition for appeal for failing to provide notice of the appeal to the trial judge, who was a necessary party (*see* n.2, *supra*). In response, Leiser filed a petition for rehearing. The petition for rehearing largely is invective. At points in the petition, Leiser accused this Court of "deliberate[ly] den[ying] . . . NAG's rights to procedural and substantive due process of law," citing "precedents that are completely inapposite and irrelevant to the issue before the Court," creating "straw-man arguments[,]" creating a rule "out of thin air," issuing a decision that represents "nothing more than [a] smokescreen[] and utter chaff" that "serve[s] as pretext[] for [our] refusal to adjudicate the . . . question."

Characterizing the motivation of this Court and the lower courts, Leiser stated that the courts' decisions "betray[] not only their supreme lack of confidence in their own decisions, but also their understandable desperation, to draw as little attention as possible, to those decisions, which are easily shown to be completely unmoored from the rule of law." He continued with his theme that the appellate court decisions represented a conscious disregard of the law and that the courts were fearful of being exposed as deceitful, writing:

> Both courts understand Leiser possesses the intellect, the courage,
> and the tenacity to expose the intellectual sophistry that properly

3

characterizes both appellate courts' decisions in this case. In order to minimize the chances that the courts' mendacity would be exposed, both courts deliberately deprived NAG's counsel of the opportunity to be heard. A court that was confident in the integrity of its decision would welcome NAG's counsel into the lion's den, where the learned judges/Justices could school Leiser on the legal issues at hand, and demonstrate the depth, of the Mariana Trench of their vastly superior knowledge of the law. Instead, the lions are apparently cowering in the corner, afraid to allow Leiser entry into the arena.

He concluded by declaring that the trial court and both appellate courts had "demonstrated their disdain for NAG's procedural and substantive due process rights, thereby manifesting not only their contempt for the Constitution, but also, their disrespect for litigants and their counsel." He also characterized the courts' decisions "as highly suspect, if not intentionally misleading and deceptive."

Finding that it lacked legal merit, we denied the petition for rehearing.

B. VCDL representation

Leiser represented the VCDL in a defamation lawsuit filed in 2021 in the Fairfax County Circuit Court. After the defendant filed a demurrer, Leiser—without leave of court and in violation of the local court rules—submitted a 16-page memorandum of law in opposition to the demurrer. The circuit court directed the VCDL to refile its memorandum to comply with the five-page limit imposed by the rules.

Rather than file a compliant brief, Leiser, on behalf of the VCDL, filed a petition for a writ of mandamus in the Court of Appeals. In the petition, Leiser requested that the Court of Appeals strike or declare invalid the Fairfax County Circuit Court Local Rules and direct the circuit court to accept memoranda of law up to 20 pages without first requiring leave of court.

A three-judge panel of the Court of Appeals denied the VCDL's petition, holding that mandamus did not lie where (1) the page limit rule involved a discretionary exercise of judgment

4

and was not a ministerial act; (2) the page limit procedure was established to ensure the timely and orderly administration of the docket, as evidenced by the VCDL's express allegation that the circuit court adopted and regularly applied the rule; and (3) there was an adequate remedy at law, namely requesting leave to file a brief that exceeded the normal page limit.

Rather than seeking leave from the circuit court to file such a brief, Leiser, on behalf of his client, filed a petition for rehearing *en banc* in the Court of Appeals, in which he made various statements concerning the Court of Appeals and "[t]he three judges comprising the panel" that denied his petition for writ of mandamus. He stated that the judges, whose names were listed in the order denying the petition, had "apparently suffered a sudden, severe, simultaneous case of collective, selective amnesia." He further stated:

> It shocks the conscience that three judges on an appellate panel conveniently ignored the pure question of law . . . . The fact that three appellate judges ignored it constitutes clear and convincing evidence they intentionally subverted the rule of law, depriving VCDL of its right, to both substantive and procedural due process of law[.]

He continued by asserting that the Court of Appeals panel had engaged in

> chicanery, presumably, in order to advance its own self-serving agenda, which is apparently, to help its colleagues on the [circuit court] create for themselves a sinecure—a job that does not require them to work too hard, think too much, and certainly, one that does not require them to read long, boring legal briefs with their citations to statutes, rules, and even longer appellate opinions. In other words, this [panel's] decision was designed to help ensure that the [circuit court] judges would not be required to do the actual work the job of a judge requires—to be and continue to become learned in the law. Instead, the [panel]'s decision is designed to facilitate the continued delivery of justice "light"—the fast-food drive-thru approach to deciding legal controversies that so many circuit courts, and in particular, [the Fairfax circuit court], routinely engage in.

He further asserted that the panel's decision demonstrated that "many judges apparently believe" that the courts are "their personal playgrounds" and that by dismissing the mandamus petition on procedural grounds, the panel was, in effect, "protecting the judiciary's self-arrogated freedom of action, to do whatever it pleases, irrespective of what the law compels it to do or prohibits it from doing." He then "demand[ed] an end to the chicanery and incompetence that is so rampant within Virginia's judiciary. Both are forms of judicial corruption that profoundly erode the judiciary's credibility as a legitimate institution of justice." Finally, he characterized the panel's decision as "a judicial middle finger directed at VCDL, its counsel, Leiser, the Supreme Court of Virginia, the General Assembly, and, most disturbingly, to the constitutionally protected due process rights of litigants, and therefore, to the rule of law, itself."

The Court of Appeals denied the VCDL's petition for rehearing *en banc*, and Leiser noted an appeal to this Court, challenging the Court of Appeals decisions denying his petitions for writ of mandamus and for rehearing *en banc*.

In the petition for appeal to this Court, Leiser again attacked the panel of the Court of Appeals and the judiciary in general. He doubled-down on his assertion that the decision of the Court of Appeals panel only could be explained by "all three judges suffer[ing] a simultaneous, spontaneous, severe case of collective, selective amnesia, or else they intentionally subverted the rule of law[.]" He repeatedly questioned the integrity and competence of the Court of Appeals panel, asserting that the panel "deliberately chose to ignore" the law and did so "in order to quietly and disingenuously engineer its preferred outcome."

Leiser next criticized courts generally, asserting that "the judiciary maintains the *appearance* that it is committed to the rule of law, when, in reality, many judicial decisions are completely unmoored therefrom." Characterizing the procedural dismissal as an attempt to hide

6

the merits of a case, Leiser asserted that the Court of Appeals panel dismissed the mandamus petition to mask its "infidelity to the rule of law[.]" He then largely repeated his assertions from his *en banc* petition that the Court of Appeals decision represented the judiciary doing "whatever it pleases, irrespective of what the law compels it to do or prohibits it from doing[,]" and that the decision represented "a judicial middle finger" by a panel that could not have reached the decision it did if it had "acted with intellectual honesty[.]"

Finding that it lacked legal merit, we denied the petition for appeal.

C. Disciplinary action

The VSB was alerted to Leiser's statements, and certified charges against him to the VSB Disciplinary Board. The Certification alleged that statements in the various pleadings filed in the NAG and VCDL matters violated both RPC 8.2, which provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge or other judicial officer[,]" and RPC 8.4(b), which provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]"

Leiser filed an answer and requested that the allegations of misconduct be heard by a three-judge circuit court.[2] A three-judge circuit court was appointed and heard the matter on September 18, 2025.

---

[2] In the introduction section of his answer, Leiser begins by writing: "The Justices of the Virginia Supreme Court are apparently very confused—not only about *where* they are, but also, incredibly, about *who* they are. Contrary to their delusion, this is not Russia, China, Iran, or North Korea." He would continue by analogizing the Virginia judiciary to "dictatorships[.]"

In addition to filing an answer, Leiser also filed and sought to argue a demurrer. In it, he stated that the

> primary argument in support of his demurrer is that Rule 8.2 is patently and flagrantly unconstitutional, as violative of the 1st Amendment. But a second and independent basis for his demurrer assumes, *arguendo*, the constitutionality of the Rule. The basis for that second challenge is that the charge against him for allegedly violating VRPC 8.2 fails to allege a material fact, whose omission is fatal to VSB's complaint.

Specifically, he contended that because the charges did not identify a specific member of the judiciary by name, the charges were fatally flawed.

At the outset of the hearing, the three-judge circuit court heard arguments on Leiser's demurrer. At the conclusion of the arguments on the demurrer, the three-judge circuit court, citing our decision in *Barrett v. Virginia State Bar*, 272 Va. 260 (2006), overruled Leiser's demurrer because a demurrer is not an available procedural device in a lawyer disciplinary proceeding.

Although it had found that a demurrer was not the proper vehicle to bring the arguments forward, the three-judge circuit court then addressed the substance of Leiser's arguments that RPC 8.2 was unconstitutional and that an allegation of a violation of RPC 8.2 requires the VSB to identify a specific judge by name. After reviewing the numerous cases and authorities cited by both Leiser and the VSB, the three-judge circuit court rejected Leiser's argument that RPC 8.2 was unconstitutional. It then rejected his argument regarding the manner in which he had been charged with violating the rule, concluding that "the VSB does not have to identify specific judges from the Court of Appeals of Virginia or justices from the Supreme Court of Virginia as targets of" Leiser's statements "in order to allege misconduct under [RPC] 8.2."

The three-judge circuit court then turned to the merits portion of the proceedings. Without objection from Leiser, the VSB introduced 29 documentary exhibits. Included in the exhibits were the various pleadings Leiser had filed that contained the statements that the VSB contended violated the relevant RPCs as well as the orders disposing of those pleadings. Leiser elected not to offer any documentary evidence, and neither party called witnesses, preferring instead to argue their respective cases on the basis of the law and the admitted exhibits.

The VSB argued that, on their face, the pleadings and orders established the alleged violations of RPC 8.2. According to the VSB, there was no question that Leiser had made numerous statements in the pleadings that attacked "the qualifications or integrity of a judge or other judicial officer[,]" RPC 8.2, as the pleadings contained multiple statements where Leiser alleged that a Court of Appeals panel, the Court of Appeals *en banc*, any justice who heard either the petitions for appeal or a petition for rehearing, and the Virginia judiciary as a whole lacked integrity, intellectual honesty, fidelity to the rule of law and otherwise rendered decisions for corrupt reasons as opposed to attempting to reach the correct legal result. The VSB further argued that Leiser's purported basis for his contentions, that the judges, justices, and courts as a whole often "airbrushed" or otherwise hid the bases for their respective decisions, was facially false, as many of the orders about which he made such allegations contained valid legal bases and reasoning. In short, it was clear from the face of the documents that the only basis for Leiser's allegations of incompetence or corruption by the judiciary was that the courts had ruled against his clients. Accordingly, the statements were both "false [and made] with reckless disregard as to [their] truth or falsity" within the meaning of RPC 8.2.

The VSB then argued that the numerous alleged violations of RPC 8.2 also demonstrated Leiser's violation of RPC 8.4(b). Specifically, the VSB argued that Leiser's repeated making of

9

false and reckless statements impugning the competence and integrity of the judiciary constituted a "deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]" RPC 8.4(b).

In response, Leiser largely did not address the specifics of any of the allegedly false or reckless statements impugning the integrity of Virginia judges. Nor did he contest the VSB's contention that he had made numerous statements "concerning the qualifications or integrity of a judge or other judicial officer[.]" RPC 8.2. Rather, he reiterated his position that RPC 8.2 is unconstitutional.

The three-judge circuit court retired to deliberate. After deliberating, the panel unanimously concluded that Leiser had violated RPC 8.2.[3] The three-judge circuit court also concluded that the pattern of behavior constituted deliberately wrongful acts by Leiser that reflected adversely on Leiser's honesty, trustworthiness, or fitness to practice law in violation of RPC 8.4(b).

---

[3] The three-judge circuit court unanimously found that the evidence established that Leiser had violated RPC 8.2 and RPC 8.4(b). In its order, the three-judge circuit court "particularly" noted passages of the pleadings that had been admitted into evidence, specifying it found violations in the following portions of pleadings filed by Leiser:

- VSB Exh. 13 (Respondent's Petition for Appeal to the Supreme Court of Virginia filed December 1, 2023) at pages 17, 34, and 35, respectively pp. VSB 0247 and 0263-0264;
- VSB Exh. 16 (Respondent's Petition for Rehearing to the Supreme Court of Virginia filed May 29, 2024) at pages 1, 3-5, and 7-10, respectively pp. VSB 0286, 0288-0290, and 0292-0295;
- VSB Exh. 24 (Respondent's Petition for Rehearing *En Banc* filed May 3, 2023 in the Court of Appeals of Virginia) at pages 8, 10, 12, 14-19, respectively pp. VSB 0447, 0449, 0451, and 0453-0458; and
- VSB Exh. 27 (Respondent's Petition for Appeal to the Supreme Court of Virginia filed June 15, 2023) at pages 21, 23, 24, and 27, respectively pp. VSB 0523, 0525-0526, and 0529.

Turning next to the sanctions phase, the VSB, without objection, introduced Leiser's prior disciplinary history. As summarized by the three-judge circuit court, Leiser's disciplinary history

> consists of a Public Reprimand with Terms issued by a three-judge court after a two-day hearing on February 13-14, 2023, for [Leiser]'s violation of Rule 8.2 based on [Leiser]'s false or reckless statements about Judge James P. Fisher of the Loudoun County Circuit Court in the NAG matter. The NAG matter is one of two cases at issue in this disciplinary proceeding. Respondent renewed his misconduct in the NAG matter, as set forth herein, just months after he received the Public Reprimand.

Leiser was offered the opportunity to present evidence on his own behalf regarding a potential sanction, but declined. The VSB then presented argument on the appropriate sanction, contending that a multi-year suspension of his law license was appropriate. Leiser responded by stating that he was "not going to argue penalty, because obviously this is just the beginning stage of this, so I'll appeal, go up to the U.S. Supreme Court. So do whatever you feel like doing. That's what the court is going to do anyway. So nothing else to say."

The three-judge circuit court retired to deliberate on an appropriate sanction. Having deliberated, the three-judge circuit court concluded that, given the serious nature of the offenses and the fact that Leiser previously had been disciplined for similar conduct, a three-year suspension of Leiser's license to practice law in the Commonwealth was the appropriate sanction.

Leiser now appeals, asserting eight assignments of error. The vast majority are variations on his argument that RPC 8.2 constitutes an unconstitutional infringement on a lawyer's First Amendment rights. He also contends that he was denied due process when the three-judge circuit court overruled his demurrer. Finally, he contends that he could not have violated RPC 8.4(b) because "the sole underlying basis for that determination was [the three-judge circuit

11

court's] erroneous finding that Leiser had violated Rule 8.2—a rule that is patently and flagrantly unconstitutional."

## II. ANALYSIS

### A. Standard of review

In reviewing the evidence and the facts found by the three-judge circuit court, our role is a limited one. Because the VSB prevailed in the proceeding below, we view the evidence in the light most favorable to it, granting it all reasonable inferences that can be drawn from such a view of the evidence. *Green v. Virginia State Bar*, 278 Va. 162, 171 (2009). Viewing the evidence in that light, "we conduct an independent examination of the entire record pertaining to the charge before us." *Pilli v. Virginia State Bar*, 269 Va. 391, 396 (2005). Although we do not accord the three-judge circuit court's factual determinations the same deference we grant to a jury's verdict, we "view [its] findings as prima facie correct" and "will sustain those conclusions unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law." *Id*.

To the extent that resolution of Leiser's appeal involves the interpretation of the Rules of this Court, including the Rules of Professional Conduct, it poses questions of law that we review de novo. *LaCava v. Commonwealth*, 283 Va. 465, 470-71 (2012). Similarly, Leiser's constitutional challenge to the Rules of Professional Conduct raises a question of law subject to de novo review in this Court. *Cf. Gallagher v. Commonwealth*, 284 Va. 444, 449 (2012).

### B. Demurrers and due process

Leiser argues that the three-judge circuit court erred in concluding that a demurrer was not a proper pleading in an attorney disciplinary proceeding. He then contends that precluding him from raising issues by way of demurrer "extinguished [his] ability to challenge the

12

constitutionality of a rule under which he is being disciplined[,]" and thus, creates "an insurmountable legal impediment to [his] ability to raise [his] constitutional defense in the disciplinary proceedings, and thereby denies [him] an adequate opportunity to raise constitutional challenges to disciplinary rules[.]" From these premises, he concludes that the decision of the three-judge circuit court regarding his demurrer effectively denied him due process of law. In both his premises and his conclusion, Leiser is mistaken.

In Virginia practice, a demurrer is a defensive pleading in suits in equity or actions at law by which a party challenges the sufficiency of an offensive pleading. Code § 8.01-273. The thrust of a demurrer is that the offensive pleading fails to "state a cause of action or that such pleading fails to state facts upon which the relief demanded can be granted[.]" *Id*. Because a demurrer's "function is to test whether the plaintiff's pleading states a cause of action upon which relief can be granted[,]" a reviewing court's decision "does not involve consideration of disputed facts, but rather is confined to issues of legal sufficiency." Kent Sinclair, Virginia Civil Procedure § 9.6 (7th ed. 2026) (footnotes omitted).

Because an attorney disciplinary proceeding before a three-judge circuit court is neither a traditional suit in equity nor an action at law, we previously have recognized that "the Rules applicable to [attorney discipline] proceedings do not authorize a reviewing body to dismiss a complaint against a lawyer on demurrer." *Barrett v. Virginia State Bar*, 272 Va. 260, 266 (2006). Like Leiser in this case, Barrett contended that such a conclusion violated his due process rights, asserting that it left him "unable to mount a proper defense in violation of his rights to due process of law." *Id*. Finding that the Certification provided to Barrett "was sufficient to put Barrett on notice of the claims against him[,]" we rejected Barrett's due process argument. *Id*.

13

Although our opinion in *Barrett* is sufficient to resolve Leiser's demurrer and due process claim, Leiser's repeated assertions conflating his inability to use a particular procedural vehicle with a denial of due process warrants further discussion. In his appeal to this Court, in his arguments before the three-judge circuit court, and in the underlying cases that gave rise to the disciplinary proceeding against him, Leiser repeatedly asserts that a tribunal finding that he has used an improper procedural vehicle for advancing a claim or argument violates due process. This misunderstands both the rulings of those tribunals and what due process requires.

It long has been recognized that the lodestar of the due process guarantee enshrined in the Fourteenth Amendment is that before a state may deprive a person of life, liberty, or property, he must be given notice and an opportunity to be heard. *See generally Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). Contrary to Leiser's repeated assertions, due process does not require a state to acquiesce in a litigant's choice of procedural vehicle so long as the state's procedures afford a litigant both notice and a meaningful opportunity to be heard.

For example, contrary to Leiser's arguments, the Court of Appeals' conclusion in the NAG litigation that the writ of prohibition was not the correct vehicle to challenge the rulings that the circuit court already had made did not, as Leiser asserts, deprive his client of due process. Rather, it expressly noted that Leiser had selected the wrong procedural vehicle to pursue his client's position and that the arguments he sought to raise could be made in a direct appeal at the appropriate time. Because NAG had a procedural vehicle available that would

14

allow it to be heard, the Court of Appeals' ruling, even if it were erroneous, did not deprive NAG of due process.

Similarly, the conclusion of the Court of Appeals that the writ of mandamus that Leiser filed on behalf of the VCDL was not the proper vehicle for seeking an enlargement of the Fairfax Circuit Court's page limit for briefs cannot properly be characterized as a denial of due process. The very order of which Leiser complains explains why mandamus was not an available procedural vehicle in that situation. Virginia's limitations on the writ of mandamus—that it only is available for ministerial acts for which a party has no adequate remedy of law, *see* Kent Sinclair, Virginia Civil Procedure § 3.6[A] (7th ed. 2026) (footnotes omitted)—do not deprive a litigant of due process of law. Furthermore, even if the Court of Appeals were incorrect in its conclusion regarding the availability of mandamus for the argument raised by Leiser, his client would always have the ability to make the underlying argument on direct appeal.

The pattern of Leiser conflating his use of the wrong procedural device with a denial of due process continued in his own disciplinary case. He contends that, because the three-judge circuit court ruled that a demurrer was not an available procedural device, he was denied the ability to argue the points he sought to raise in the demurrer: that RPC 8.2 is unconstitutional and that a charge under RPC 8.2 requires the VSB to identify by name in the charging document the specific member of the judiciary about whom the challenged statements are made.[4] Even a cursory review of the proceedings below demonstrates that Leiser is mistaken.

---

[4] When he made this argument before the three-judge circuit court, the presiding judge made clear the panel's understanding that the unavailability of a demurrer did not preclude Leiser from challenging the constitutionality of RPC 8.2, asking "Mr. Leiser, is it not a separate issue as to whether or not [RPC 8.2] is constitutional and whether or not you can argue it on demurrer?"

Although the three-judge circuit court concluded that a demurrer was not an available pleading in an attorney discipline proceeding, it allowed Leiser to argue both that RPC 8.2 was unconstitutional and that the charge was fatally flawed because it did not identify a specific judicial officer by name. The transcript reveals that, before evidence was taken, Leiser made these arguments at length, covering more than 30 pages of transcript. After the VSB made its argument on these questions and had admitted exhibits that supported its position, Leiser was allowed to make further argument on these questions, covering another 12 pages of transcript.

After Leiser's initial arguments, the three-judge circuit court recessed to consider them. When the panel retook the bench, it announced its ruling on the issues. The panel concluded that RPC 8.2 was constitutional and that the charging document did not need to identify the judges or justices by name.

The three-judge circuit court then proceeded to hear the merits of the case. In arguing his position on the merits, Leiser again asserted his belief that RPC 8.2 is unconstitutional. The three-judge circuit court did not preclude him from making that argument; rather, it simply found his argument unconvincing.

In short, nothing about the three-judge circuit court's demurrer ruling precluded Leiser from making the arguments he sought to make. He made those arguments, the three-judge circuit court ruled on those arguments, and he now appeals those rulings to this Court.[5] Because he had notice of the charges against him and more than ample opportunity to make the arguments that he mistakenly tried to raise by demurrer, the disciplinary proceeding has given Leiser all the notice he was due and a meaningful opportunity to be heard. Accordingly, his due process claim related to the three-judge circuit court's demurrer ruling is meritless.

---

[5] We address the merits of those arguments in Sections II(C) and II(D), *infra*.

C. RPC 8.2 and the First Amendment

Leiser raises two First Amendment challenges to RPC 8.2. First, he alleges RPC 8.2 is facially unconstitutional. Alternatively, he argues that it is unconstitutional as applied to him. We address each argument in turn.

1. Facial challenge

Leiser asserts that RPC 8.2 is facially unconstitutional in that it chills legitimate criticism of public officials, in this case judges and justices. He asserts that such criticism is political speech, and thus, enjoys the highest level of protection provided by the First Amendment. Although much about Leiser's premises are true, his conclusion that RPC 8.2 is facially unconstitutional is not.

It is true that as "a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (internal quotation marks and citations omitted). Although the First Amendment protects both political and non-political expression, political speech deserves special consideration because such "[s]peech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010). *See also Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034 (1991) (opinion of Kennedy, J.) ("There is no question that speech critical of the exercise of the State's power lies at the very center of the First Amendment.").

The First Amendment, however, has never been interpreted as protecting all speech at all times. From the time of its adoption, the First Amendment "has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in

order and morality.'" *R. A. V. v. St. Paul*, 505 U.S. 377, 382-83 (1992) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).  The protection provided "by the First Amendment does not include a freedom to disregard these traditional limitations." *Id.* at 383.  As a result, the First Amendment does not prevent states from punishing obscenity, defamation, fraud, incitement, or speech integral to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citations omitted).

Given the text and purpose of RPC 8.2, as well as the arguments advanced by Leiser, the fact that defamation traditionally is not entitled to First Amendment protection is significant. Recognizing this, Leiser heavily relies on *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), arguing that the higher burden that case places upon restricting criticism of public officials is incompatible with the text of RPC 8.2.  A comparison of the case and the text of the rule reveals that he is mistaken.

In *New York Times*, the United States Supreme Court addressed the intersection of the criticism of public officials, defamation, and the First Amendment.  The specific question before the Court was "the extent to which the constitutional protections for speech and press limit a State's power to award damages in a libel action brought by a public official against critics of his official conduct." 376 U.S. at 256.  The Supreme Court held that the Alabama civil libel regime at issue was "constitutionally deficient for failure to provide the safeguards for freedom of speech and of the press that are required by the First and Fourteenth Amendments in a libel action brought by a public official against critics of his official conduct." *Id.* at 264.

In reaching this conclusion, the Supreme Court stressed that, regarding conduct of public officials as opposed to private citizens, it is not enough that an allegedly defamatory or libelous statement be false. *Id.* at 268, 271.  The Supreme Court reasoned that the First Amendment

demands more for a state to impose liability for criticisms of government officials because "of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id*. at 270. Ultimately, the Supreme Court concluded that because "erroneous statement is inevitable in free debate," *id*. at 271, something more than mere falsity must be shown for a state to penalize statements about public officials. *Id.* at 273.

That something more is colloquially known as *New York Times* malice. Specifically, the Supreme Court crafted a standard that before a state may impose sanction for false statements about a public official, it must be shown that the speaker made the false statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id*. at 280.

In *New York Times*, the Supreme Court analogized the public official in that case to members of the judiciary, who it had noted were subject to criticism, with any resulting damage to "the dignity and reputation of the courts" being insufficient to "justify the punishment as criminal contempt of criticism of the judge or his decision." *Id.* at 272-73. The analogy confirms that First Amendment protections apply to criticisms of judicial officers and courts; however, as even Leiser concedes, the Supreme Court also has recognized that, given the state's interest in the administration of justice, the First Amendment permits some limitation on unfounded criticisms leveled by lawyers against judicial officers when those criticisms pose a significant threat to the administration of justice.[6] *See, e.g., Gentile,* 501 U.S. at 1071; *In re*

---

[6] Even Leiser acknowledges that the First Amendment does not prohibit all limitations on a lawyer's speech, conceding below that "it is actionable for a lawyer to make a false statement of fact of and concerning a judge or other judicial official if it is proven that the statement is both false and that it was made with knowledge of its falsity or with reckless disregard for its truth or falsity."

*Snyder*, 472 U.S. 634, 644-45 (1985); *Sacher v. United States*, 343 U.S. 1, 9 (1952). Against this backdrop, we review the language and purpose of RPC 8.2.

The text of RPC 8.2 makes clear that it does not prohibit lawyers from engaging in legitimate criticism of judges or other judicial officers. Factually based criticisms that do not pose significant issues regarding the administration of justice fall outside of the scope of the rule.[7] RPC 8.2's prohibition only applies to criticisms a lawyer makes regarding "the qualifications or integrity of a judge or other judicial officer" that "the lawyer *knows to be false or with reckless disregard as to its truth or falsity*[.]" (Emphasis added.)

It is no coincidence that this language neatly tracks the language from *New York Times* that, to be actionable, a statement about public officials must be made "with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 280. The inclusion of this language, largely setting forth the constitutional standard from *New York Times*, has and continues to inform our interpretation of RPC 8.2, limiting the scope of the rule to constitutional applications.

Leiser is not the first attorney to attempt to insulate his violations of RPC 8.2 by arguing that the rule is unconstitutional. We have consistently rejected such arguments as unfounded. *See*, *e.g.*, *Anthony v. Virginia State Bar*, 270 Va. 601, 610 (2005), *cert. denied*, 547 U.S. 1193 (2006); *Moseley v. Virginia State Bar ex rel. Seventh District Committee*, 280 Va. 1, 3 (2010). In

---

[7] That the scope of RPC 8.2 is tied to unjust criticisms that undermine the Commonwealth's interest in the administration of justice finds support in the official comment that accompanies the rule. That comment provides that "[f]alse statements by a lawyer concerning the qualifications or integrity of a judge can unfairly undermine public confidence in the administration of justice." RPC 8.2, comment 1. Although not part of the text of the rule, the comment accurately reflects our understanding of RPC 8.2.

20

*Anthony,* we emphasized that the characteristics that distinguish the judicial branch from the political branches create the need for rules like RPC 8.2, noting:

> Judges are no more immune from criticism in the public forum than are any other public office-holders, although their ability to reply to it is extremely limited. A judge's errors are subject to correction on appeal, and judicial misconduct is subject to discipline by independent bodies created by statute. Judges are subject to removal or impeachment for wrongdoing pursuant to constitutional provisions, and they are responsible for violations of the law as are all other citizens. The judicial branch of government, however, is uniquely dependent upon the trust of the people for the effective performance of its work. It commands no armies and does not control the public purse. It is especially vulnerable to unfounded attacks that undermine public confidence in its integrity. Reckless attacks by lawyers are especially damaging[.]

270 Va. at 610. We then concluded that a statement that violates RPC 8.2 "creates a substantial likelihood of material prejudice to the administration of justice as a matter of law and is not, therefore, constitutionally protected speech." *Id.* Leiser has offered no reason or argument that convinces us to abandon that conclusion.

As the VSB notes, RPC 8.2 is "[b]ased on the American Bar Association's Model Rule 8.2(a)" and therefore, similar rules have been adopted by many of our sister states. Not surprisingly, lawyers in those jurisdictions have, like Leiser here, raised First Amendment challenges to those rules. Our colleagues in other states have rejected those First Amendment challenges for reasons similar to our rationale in *Anthony. See, e.g.*, *Board of Pro. Resp. v. Parrish*, 556 S.W.3d 153, 167 (Tenn. 2018), *cert. denied*, 586 U.S. 1151 (2019); *Attorney Grievance Comm'n v. Frost*, 85 A.3d 264, 277-78 (Md. 2014); *Kentucky Bar Ass'n v. Blum*, 404 S.W.3d 841, 855-856 (Ky. 2013), *cert. denied*, 572 U.S. 1089 (2014); *Office of Disciplinary Couns. v. Gardner*, 793 N.E.2d 425, 429 (Ohio 2003), *cert. denied*, 540 U.S. 1220 (2004); *In re Wilkins*, 777 N.E.2d 714, 717-718 (Ind. 2002), *cert. denied sub nom.*, *Wilkins v. Disciplinary*

*Comm'n of the Sup. Ct.*, 540 U.S. 813 (2003); *In re Shearin*, 765 A.2d 930, 938 (Del. 2000), *cert. denied sub nom.*, *Shearin v. Board of Pro. Resp.,* 534 U.S. 961 (2001). For all of these reasons, we reiterate our conclusion in *Anthony* that RPC 8.2 is facially constitutional.

2. As-applied challenge

We now turn to Leiser's as-applied constitutional challenge. Regarding the judges and justices involved in the decisions he challenged, he repeatedly characterized judicial officers as deceitful and deciding cases for corrupt reasons, i.e., for reasons other than the neutral application of the law to the scenarios presented. Such statements clearly "concern[] the qualifications or integrity of a judge or other judicial officer." RPC 8.2. In fact, we note that Leiser has never challenged that he made the statements or that the statements concern the qualifications or integrity of sitting Virginia judges or justices. Rather, he argues that the statements were true or that, at the very least, the VSB failed to offer sufficient evidence to allow the three-judge circuit court to determine that the statements were false. Our "independent examination of the entire record pertaining to the charge before us[,]" *Pilli*, 269 Va. at 396, causes us to conclude that there is more than sufficient evidence to support the three-judge circuit court's conclusion that Leiser's statements attacking the qualifications and integrity of the judicial officers violated RPC 8.2.

Leiser's filings provide more than a sufficient basis for concluding that his attacks on the integrity of the judges and justices were false and that he either knew they were false or that he made them with reckless disregard for their truth or falsity. As the VSB argued below, Leiser, as his purported justification for his accusations of corruption, asserted that the Court of Appeals panel in the NAG matter avoided the arguments he raised. Yet the order specifically addresses the subject matter jurisdiction argument and the unavailability of a writ of prohibition. Given

22

that Leiser's purported rationale was facially false, a rational factfinder could conclude, to the requisite level of certainty, that not only was Leiser's conclusion (the panel was corrupt) false, but that he knew that the allegation was false or, at a minimum, showed a reckless disregard for whether his accusation was true or false.

That is but one example of many in the various filings where Leiser ignores the reasoning of and rationale expressed in a court order, imagines that the order thus has no basis, and concludes that corruption is the only explanation.[8] His statements effectively assert that his legal positions are always correct, and thus, *ipse dixit*, any adverse ruling is evidence of corruption. In short, any game in which Leiser does not prevail is a rigged game. A rational trier of fact is not required to accept such reasoning (such as it is). The various legal filings taken as a whole allow such a factfinder to conclude, to the requisite level of certainty, that Leiser violated RPC 8.2 in making the statements that underpin the judgment of the three-judge circuit court. *See* n.3, *supra*.

Finally, we note that all of the challenged statements made by Leiser were made in pleadings filed in cases as those cases were being actively litigated. Thus, the statements were made not in the court of public opinion, but rather, in an actual court as part of an active proceeding. As the Supreme Court has made clear, "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court

---

[8] Although the burden was on the VSB to prove the violation of RPC 8.2 and Leiser did not bear a burden to demonstrate the contrary, we note that at no point before the three-judge circuit court or on appeal to this Court did Leiser offer any basis for his allegations of corruption other than that his arguments had not been adopted.

beyond the point necessary to preserve a claim for appeal."[9] *Gentile*, 501 U.S. at 1071. As a result, "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard" than other First Amendment speakers. *Id*. at 1074. Accordingly, for purposes of Leiser's as-applied challenge, we note that Leiser's specific speech here was entitled to less protection than a speaker commenting about the same issues outside of actual case proceedings.

D. RPC 8.2's reference to "a judge or other judicial officer"

Over the course of this case, Leiser has argued that to state a charge under RPC 8.2, the VSB must allege and prove that the lawyer's comments were about a specifically named judge. He contends that "[t]he text of Rule 8.2, which prohibits statements that are critical '. . . of a judge or other judicial officer[,]' . . . appears to make the identity of the jurist unfairly criticized a *sine qua non* of an alleged violation." (Emphasis removed.) He argues that the rule's text precludes the application of RPC 8.2 to a statement addressing multiple judicial officers or to "a statement that criticizes the judiciary, generally." Finding such a reading of RPC 8.2 inconsistent with its text and ordinary rules of English grammar and usage, we disagree.

Contrary to Leiser's assertion, the phrase "a judge or other judicial officer" does not command that the criticism must be directed toward a single, specific judicial officer. This is so because RPC 8.2 utilizes the indefinite article "a" before the phrase "judge or other judicial officer."

---

[9] Leiser argues that his statements should not be considered as having been made "in court" in pending cases because the statements were not oral statements made from the well of a courtroom but were written statements made in filings intended to be read by the respective courts and anyone who read the case files at a later date. We do not find such a distinction persuasive. Just like words spoken from the well of the courtroom, written statements made in filings lodged with a court clerk for consideration by a court constitute "the speech of [a] lawyer[] representing [a] client[] in [a] pending case[.]" *Gentile*, 501 U.S. at 1074.

As we have recognized, "[t]he indefinite article 'a' is 'used as a function word before most singular nouns . . . when the [singular noun] in question is undetermined, unidentified, or *unspecified*.'" *Smallwood v. Commonwealth*, 300 Va. 426, 434-35 (2022) (quoting Webster's Third New International Dictionary 1 (1993)) (emphasis added). Thus, "[t]he ordinary meaning of the word 'a' means 'any' or 'each.'" *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008) (citing Webster's Third New International Dictionary 1 (1993)). Utilizing this understanding of grammar and usage to interpret a statute containing the phrase "a person," we have held that "the term 'a person' means any individual human being, [such that] the term encompasses the entire universe of people[.]" *Id.*

Applying the foregoing to RPC 8.2, it becomes clear that Leiser's argument fails. Absent context dictating otherwise, the phrase "a judge or other judicial officer" should be read as encompassing *any* judicial officer and encompassing the entire universe of judicial officers. Properly understood, RPC 8.2's prohibition applies not just to statements made about a single, individual judicial officer, but applies to statements made about such individuals, groups of judges—to include identifiable panels of the Court of Appeals or this Court—and even the whole of the Virginia judiciary, i.e., "the entire universe" of Virginia judicial officers.

Leiser's notice argument fares no better than his proffered interpretation. The fact that the VSB's Certification did not expressly name the judges or justices whose qualifications and integrity Leiser attacked did not deprive Leiser of notice of the identity of those judges or justices. There is no dispute that Leiser made the subject statements as they are contained in pleadings he filed and signed. That fact alone suggests that Leiser is fully aware of which judges and justices he was referencing. More to the point, all the filings referenced address rulings of identified or identifiable panels of judges or justices.

For example, his petition to this Court seeking to appeal the Court of Appeals' October 2, 2023 order denying the writ of prohibition in the NAG case contained numerous statements attacking the qualifications and integrity of the three-judge panel of the Court of Appeals that had entered the order. On its face, the October 2, 2023 order identified the three judges who sat on that panel. Thus, the filing itself makes clear to everyone, including Leiser, the judges against whom he had made the subject statements. His subsequent petition for rehearing in this Court similarly attacked the denial of the writ by members of this Court, and thus, he was fully on notice that his statements were about the members of this Court who denied the petition for appeal.

Similarly, his petition seeking *en banc* review of the April 19, 2023 denial by a panel of the Court of Appeals of VCDL's petition for a writ of mandamus attacked the qualifications and integrity of the panel that had denied the writ. On its face, the April 19, 2023 order identified the three judges who sat on that panel. Thus, the filing makes clear to everyone, including Leiser, the judges against whom he had made the subject statements. Similarly, in his petition for appeal in this Court that sought to appeal the panel's decision, he again attacked the integrity and qualifications of the Court of Appeals panel and, at a minimum, implied such an attack on the *en banc* Court of Appeals. Once again, because the filing was directed at a decision of a known panel of the Court of Appeals, it makes clear to anyone who reads the filing which judicial officers Leiser was referencing. As the author of the statements, Leiser certainly was aware.

Simply put, the VSB, by identifying the subject statements that Leiser made in filings directed to rulings made by identifiable judges, sufficiently identified the judicial officers against whom Leiser had made the statements. Leiser had more than sufficient notice of the identities of

26

the judges and justices whose qualifications and integrity he had attacked, and therefore, his due process claim fails.

E. Violation of RPC 8.4(b)

The three-judge circuit court found that Leiser's repeated violations of RPC 8.2 also constituted a violation of RPC 8.4(b), which provides, in pertinent part, that "[i]t is professional misconduct for a lawyer to . . . commit a . . . deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]" In cursory fashion, Leiser challenges this finding, asserting that his violations of RPC 8.2 cannot be the basis for a finding of misconduct under RPC 8.4(b) because RPC 8.2 is unconstitutional. The limited reasoning and argument Leiser puts forward on appeal appears to be that if RPC 8.2 is unconstitutional, a lawyer does not commit a deliberately wrongful act by repeatedly violating it.

Of course, we have concluded that RPC 8.2 is constitutional both on its face and as applied to Leiser. Given that Leiser's challenge to the finding that he violated RPC 8.4(b) is entirely predicated on RPC 8.2 being found unconstitutional, our contrary conclusion is fatal to his sole argument on appeal. As a result, we find that the three-judge circuit court did not err in concluding that Leiser violated RPC 8.4(b).

## III. CONCLUSION

Public debate is a cornerstone of our system of government. The First Amendment protects the right of a citizen, including a lawyer, to criticize government officials, including judges and justices. RPC 8.2 does not prohibit lawyers from criticizing the professional conduct of judges and justices or the decisions that they may reach. Rather, it only prevents lawyers from making baseless attacks on the qualifications or integrity of a judge or justice in a manner likely to prejudice the proper administration of justice.

A lawyer claiming the system is rigged merely because his arguments prove unconvincing does little to advance public discourse. Great damage is done to our system of justice when a lawyer accuses judges of deceit and corruption with no basis for those accusations beyond the fact that an argument he made was not accepted by a court. Our independent review of the record leads us to conclude that is precisely what happened here.

The First Amendment does not shield a lawyer from discipline when he makes such statements. Accordingly, we affirm the judgment of the three-judge circuit court.

*Affirmed*.